**Mary Lou RYAN, Guardian of the Person and Estate of Texanna Ledbetter, NCM, Appellant,**

v.

**The FORT WORTH NATIONAL BANK, Executor and Trustee of the Estate of G. R. White, Deceased, Appellee.**

No. 11626.

Court of Civil Appeals of Texas.

Austin.

Oct. 16, 1968.

Rehearing Denied Oct. 30, 1968.

Hardeman, Smith & Kever, Kenneth P. Courtright, San Angelo, for appellant.

Turpin, Smith, Dyer, Hardie & Harman, Irby L. Dyer, Midland, for appellee.

HUGHES, Justice.

This suit is by Mary Lou Ryan, Guardian for Texanna Ledbetter, a person of unsound mind, against the Fort Worth National Bank, Executor and Trustee of the estate of G. R. White, deceased, to quiet title to certain mineral interests in Concho County, Texas. Trial to the court without a jury resulted in a judgment that the guardian for Texanna Ledbetter take nothing by her suit.

At appellant's request, the trial court made and filed findings of fact from which we quote:

"By deed dated October 1, 1928, G. R. White and wife, Victoria L. White, and C. C. Ledbetter and wife, Texana Ledbetter, conveyed to John Hargis, Ray C. Hargis and Wood P. Hargis some 8103.95 acres of land in Concho County, Texas, which deed is of record in Vol. 35, Page 60, Deed Records of Concho County, Texas, and contains the following reservation, towit:

'Grantors herein reserve for themselves, their heirs assigns and legal representatives, an undivided $\frac{1}{16}$th interest in and to all minerals, of every kind and description, including oil and gas, in, upon and under said lands; but the right to control and manage and make any and all gas and oil leases or other mineral leases upon said land is hereby granted exclusively to grantees herein, their heirs, assigns and legal representatives, and they shall be entitled to any and all cash bonus or bonuses paid on any and all oil and gas leases on said land, together with all cash rentals under such leases; but an undivided $\frac{1}{16}$th of any and all oil and gas and other minerals developed from said land shall be owned by grantors herein, their heirs, assigns and legal representatives.'

2. The said C. C. Ledbetter died testate on or about September 24, 1940. His wife, Texana Ledbetter, was the sole devisee in said will and was also named independent executor without bond. Said will was admitted to probate and Mrs. Ledbetter was appointed independent executor on October 14, 1940.

3. At the time of C. C. Ledbetter's death and for many years prior thereto the said C. C. Ledbetter and G. R. White conducted a partnership business under the name of C. C. Ledbetter and Company.

4. At the time of C. C. Ledbetter's death said partnership was heavily indebted, owing nearly $200,000.00, far in excess of the value of the assets of said partnership.

5. The land mentioned in Finding No. 1 above, 8103.95 acres, more or less, was

the property of the said G. R. White and C. C. Ledbetter, as partners aforesaid, at the time they made said conveyance to the Hargises on October 1, 1928, and had been acquired by them during the marital relationship of Mr. and Mrs. Ledbetter.

6. On or about August 3, 1945, Texana Ledbetter executed the deed to G. R. White which bears date July 1, 1945, is recorded in Vol. 116, Page 352, Deed Records of Concho County, Texas, and is mentioned in the plaintiff's petition in this cause.

7. The consideration for said deed was that G. R. White had paid and discharged all debts of the Ledbetter and Company partnership, it having been agreed between Mr. White and Mrs. Ledbetter after Mr. Ledbetter's death that Mr. White would pay such debts and take all property of every kind and description belonging to said partnership which also included all property, both real and personal property, in the joint names of G. R. White and C. C. Ledbetter.

8. In connection with the agreement that Mr. White would pay the partnership debts and have all property belonging to the partnership, including all property in the joint names of White and Ledbetter (Finding No. 7 above) the parties did not intend to exclude the community interest of Mrs. Ledbetter in any property which had belonged to the partnership, and it was the intention of Mrs. Ledbetter and Mr.

White for the deed bearing date July 1, 1945, to sweep up and include the whole Ledbetter interest in all properties then on hand which had belonged to the partners or which stood in the name of G. R. White and C. C. Ledbetter at the time of Mr. Ledbetter's death, and particularly all the Ledbetter interest in any real estate or interest in real estate in their names in Concho County.

9. At the time the deed from Mrs. Ledbetter to Mr. White was made, there was no real estate in Concho County, outside of the minerals reserved in the deed to the Hargises, to which the deed from Mrs. Ledbetter to Mr. White, could have possibly applied.

10. The deed from Texana Ledbetter to G. R. White was prepared by Sam McCollum, attorney, of Brady, Texas, at the instance of G. R. White. Mr. McCollum was representing Mr. White generally at the time. Mr. McCollum represented the partners prior to Mr. Ledbetter's death, and he represented Mrs. Ledbetter in connection with her deceased husband's estate, but the Court cannot find whether or not he was still doing her legal work at the time of the conveyance to Mr. White. She read the deed before signing it."

The deed of July 1, 1945, from Mrs. Ledbetter to G. R. White, mentioned in the court's findings, we copy in full:

"THE STATE OF TEXAS ⎫ KNOW ALL MEN BY THESE
COUNTY OF McCULLOCH ⎬ PRESENTS
⎭

That whereas during the lifetime of Claude C. Ledbetter, the said Claude C. Ledbetter and G. R. White were partners, doing business under the partnership name of C. C. Ledbetter and Company; and whereas said partnership owned certain lands and interest in lands in Concho County, Texas, and owned livestock and other property located in various places; and whereas said partnership of C. C. Ledbetter and Company was heavily in-

debted at the time of the death of Claude C. Ledbetter, which occurred at Brady, Texas, on September 24, 1940; and whereas the said Claude C. Ledbetter died testate and under his last will and testament all property passed to his surviving wife, Texana Ledbetter, subject to the payment of his debts; and whereas after the death of said Claude C. Ledbetter and after his will had been duly admitted to probate in the Probate Court

of McCulloch County, Texas, the said Texana Ledbetter as sole devisee and legatee under the last will and testament of the said Claude C. Ledbetter, deceased, entered into an agreement with the said G. R. White, whereby the said G. R. White was to take all property of every kind and description belonging to the partnership of C. C. Ledbetter and Company which also included all property, both real estate and personal property, in the joint names of G. R. White and C. C. Ledbetter, in consideration of the said G. R. White agreeing to pay off and discharge all partnership debts; and whereas the said G. R. White has fully complied with his agreement and has paid off and discharged all said partnership debts:

Now therefore I, Texana Ledbetter, as sole devisee and legatee under the last will and testament of the said Claude C. Ledbetter, deceased, in consideration of the said G. R. White having paid off and discharged all indebtedness owing by the partnership of C. C. Ledbetter and Company, have this day and by these presents sold, conveyed, and transferred to the said G. R. White all property of every kind and description wheresoever situate, both real estate and personal property, and all interest in both real estate and personal property owned and held in the name of C. C. Ledbetter and Company, and all property both real and personal property owned and held in the name of G. R. White and C. C. Ledbetter. It is my intention to convey and I do hereby specially convey all real estate and all interest in real estate situate in Concho County, Texas, and in the names of G. R. White and C. C. Ledbetter.

TO HAVE AND TO HOLD all said property under the said G. R. White, his heirs and assigns forever free from any and all claims by me or anyone claiming under me.

Witness my hand this 1st day of July, A.D. 1945.

/s/ Texanna Ledbetter"

The trial court made, among others, the following conclusions of law:

"3. An undivided one-half (½) of the land described in the deed to the Hargises was the community property of C. C. and Texana Ledbetter at the time the deed was made.

4. An undivided one-half (½) of the mineral interest reserved in the deed to the Hargises was the community interest of the Ledbetters and such would have been true without Mrs. Ledbetter's joinder.

5. The mere fact of the joinder of the wives of the grantors in the deed to the Hargises did not change the legal status of the reserved mineral interest nor destroy its character as being the property of the partnership or of the partners.

6. The deed from White and Ledbetter to the Hargises is ambiguous in that resort must be had to extraneous evidence to identify the real estate or interest in real estate in Concho County falling within the descriptive data given in the deed.

7. The deed from Texana Ledbetter to G. R. White, bearing date July 1, 1945, and executed on August 3, 1945, conveyed all the minerals which had been reserved to the Ledbetters in the deed to the Hargises, and must be construed accordingly.

8. Texana Ledbetter owns no interest in the minerals mentioned in her petition and judgment must be rendered for defendant."

There is evidence that the mineral interests involved in this suit were not carried on the books of C. C. Ledbetter and Company as an asset after the date of the Hargis deeds in which they were reserved.

The evidence also shows that Mrs. Ledbetter, following the death of Mr. Ledbetter, did not list these minerals as belonging to the community estate of C. C. Ledbetter and herself in either her federal estate tax return or the inventory and appraisement filed by her in the probate court as required by State law.

There is also evidence that Mr. G. R. White, who had died prior to the trial of this case, did not consider the July 1, 1945 deed from Mrs. Ledbetter to him as conveying to him these mineral interests. Allen Ledbetter, the son of Mr. C. C. Ledbetter and Texanna Ledbetter, testified that in the fall of 1945, and subsequent to the deed in question, Mr. White asked him if he (Mr. Ledbetter) did not think that he (Mr. White) should have the oil royalties on the property in Concho County. Upon Mr. Ledbetter's replying that he did not, Mr. Ledbetter then related a subsequent conversation with Mr. White, wherein he stated that he (Mr. White) agreed that Mrs. Ledbetter was entitled to the mineral interest. Mr. Ledbetter testified that Mr. White told him that the paper (Ledbetter-White deed) had nothing to do with the royalties and "It was divided up when they sold the land," referring to the Hargis deeds in 1928.

Mr. Conn Johnson testified that in the fall of 1945 he discussed with Mr. White the possibility of purchasing the royalty interest in the property in Concho County. He testified that Mr. White advised him that "Mrs. Ledbetter owns one-half of the minerals, royalty, whatever it was. That if any trade was made, Mrs. Ledbetter would have to sign it."

On cross examination Mr. Johnson was asked if anyone else was present when he had the conversation with Mr. White about these mineral interests and he answered, "I don't believe there was. I don't remember anything about it."

Appellant has five points which are jointly briefed. These points are (1) that the trial court erred in concluding as a matter of law that the 1945 deed from Mrs. Ledbetter to G. R. White conveyed the minerals in suit; (2) that the trial court erred in finding as a fact that the 1945 deed, Ledbetter to White, was intended by Mrs. Ledbetter to "sweep up and include the whole Ledbetter interest in all properties then on hand which had belonged to the partners;" (3) that the trial court erred in finding, as a matter of law that Mrs. Ledbetter owns no interest in the minerals in suit; (4) that the trial court erred in failing to find the 1945 Ledbetter-White deed ambiguous and in not considering the parol evidence to determine its true meaning and (5) that the trial court erred in not finding, as a matter of law, that the minerals in suit were not a partnership asset at the time of Mr. Ledbetter's death.

We overrule all five points.

Appellant makes two major contentions under these points. First, she takes the position that the deeds executed October 1, 1928, by G. R. White, joined by his wife, Victoria, and by C. C. Ledbetter, joined by his wife, Texanna, in which the mineral reservations involved here were contained, had the effect of withdrawing these reserved minerals from partnership assets, and that this position is fortified by the fact that these minerals were not thereafter carried as assets on the partnership books.

The second major contention is that the 1945 Ledbetter-White deed is ambiguous and, under the evidence, should be held to convey no interest in these minerals.

These contentions somewhat overlap and we will discuss them generally and jointly.

There is no contention that the description in the 1945 deed, being general, is not sufficient to convey these mineral interests. The evidence reflects that the only property to which the description could possibly apply was the mineral estate in suit. See Baker v. Smith, 407 S.W.2d 4, Fort Worth C.C.A. (1966) writ ref. n. r. e., Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744, (1937).

The 1945 deed clearly evidences an agreement by Mrs. Ledbetter with Mr. White that Mr. White was to have all the partnership assets in consideration for his payment of the partnership debts. This agreement, as evidenced by the deed, applied to all partnership property including real estate in the joint names of Mr. White and Mr. Ledbetter.

It is not disputed that the lands conveyed to Hargis in 1928 and in which conveyances these minerals were reserved were partnership assets. It follows, in our judgment, that the minerals reserved were partnership assets, and this notwithstanding the joinder of the wives of Mr. Ledbetter and Mr. White as grantors. They were in fact, the wives, nominal grantors only and were probably joined to forestall inquiries as to homestead rights. While the wives had a community interest in the lands conveyed this interest was subject to conveyance by the husbands alone, no homesteads being claimed, and subject to partnership and community management and debts. The wives had no interest in these lands which they could convey or in which their joinder was necessary to a conveyance. The joinder of Mrs. White and Mrs. Ledbetter in these deeds added nothing to the force and effect of the instruments. Speers, Marital Rights in Texas, Vol. 2, p. 219, Tex.Jur.2d, Vol. 19, Deeds, Sec. 58.

Nor did the reservation in these 1928 deeds, copied above, create an estate in the wives other than the community estates they owned which were subject to partnership and community management and liabilities.

In McKee v. Douglas, 362 S.W.2d 870, Tex.Civ.App. (1962) writ ref. n. r. e., the wife joined the husband in the conveyance of his separate real estate which contained a mineral reservation to "themselves." The Court held that this reservation created no title to the wife in the mineral reservation and cited in support of its decision the case of Leidig v. Hoopes, 288 P.2d 402, Sup.Ct. of Oklahoma.

In Leidig the wife, owning no interest in the land, joined her husband in a conveyance of real estate the deed reserving to "the vendors, their heirs, administrators, executors or assigns" certain mineral interests. In holding that the wife obtained no interest in the minerals through such reservation the Court stated:

"A reservation in a deed, to be effective, must reserve some right or interest owned or possessed by grantor in the land at the time the deed was made. * * *

The title to the land prior to the execution of the deed in question was in Will W. Reed alone. Rosa A. Reed was a stranger to the title and had no interest which could be subject to a reservation or exception in the deed. The deed did not purport to operate as a conveyance of an interest to her. Although she was named as a grantor and signed the same as such, the reservation was a nullity as far as she was concerned. A reservation or exception in a deed does not create an estate or interest in the thing reserved. * * *

If a reservation can create no estate not already in existence, and if a wife owns no interest in the real estate prior to joining with her husband in executing a deed to such real estate, and there are no words of grant to her in the deed, then logically she can hold no greater interest in the real estate after the deed than she did before, and the estate reserved in the deed is reserved to the husband and not to her."

The Court in Leidig quoted from Ogle v. Barker, 224 Ind. 489, 68 N.E.2d 550, as follows:

"It will be observed that in the deed from Mr. and Mrs. Scott to Paul S. Barker there were no words of grant or conveyance to Mrs. Scott. That being true, then by virtue of the deed Mrs. Scott acquired no title because there can be no valid and operative conveyance of

land without words of grant or alienation. Legout v. Price, 1925, 318 Ill. 425, 149 N.E. 427, 429, 430 and cases cited; Saunders v. Saunders, 1940, 373 Ill. 302, 26 N.E.2d 126, 129 A.L.R. 306. Property cannot be conveyed by reservation, 26 C.J.S., Deeds § 140 p. 452, note 58. A reservation in a deed does not create title or enlarge the vested rights of a grantor; it merely reserves the specific interest named therein from the operation of the grant, and leaves that interest vested in the grantor to whom it belonged at and before the execution of the deed. 26 C.J.S., Deeds, § 140, p. 453, notes 74 to 77; Village of Terrace Park v. Errett, 6 Cir. 1926, 12 F.2d 240; Thompson on Real Property, Permanent Ed., Vol. 6, § 3–458, p. 686.

It is a general rule that in a deed of conveyance a reservation by the owner is effective only in favor of the grantor, upon the theory that it holds back some interest from the estate conveyed and leaves it where it was. Ordinarily, such a reservation cannot vest an interest in one not theretofore having same unless words of grant are used."

We believe these cases are sound in principle and that they require a decision adverse to the contentions of appellant.

Appellant cites Swearingen v. Bassett, 65 Tex. 267 (1886), Spencer v. Jones, 92 Tex. 516, 50 S.W. 118 (1899) and Kendall v. Hackworth, 66 Tex. 499, 18 S.W. 104 (1885) to the effect that partners may withdraw their interests in realty from the partnership and that this was the effect of the reservations in the 1928 deeds as confirmed by the failure to carry such mineral interests as assets of the partnership and the failure to include such mineral interests in a conveyance of partnership property to a creditor of the partnership executed after the death of Mr. Ledbetter. With reference to this latter factual assertion, the record does show that in 1941, G. R. White and Texanna Ledbetter did make transfers of specified and definite real and personal partnership property to Stockyard Loan Company for credits on partnership liabilities to the Company. There was no general conveyance of all partnership assets to Stockyards.

No express agreement between the partners to withdraw the mineral interests from the partnership is proved or attempted to be proved. There are countervailing circumstances, alluded to herein, which tend to prove or disprove such an agreement. None of these circumstances is of a conclusive nature. The findings, conclusions and judgment of the trial court negate the existence of such an agreement. We are not asked to upset these findings as being against the weight of the evidence. We sustain the findings of the trial judge in this respect.

We are unable to find any ambiguity in the 1945 Ledbetter-White deed except as to identity of the land conveyed. Even if there existed ambiguity as to its true meaning, as appellant contends, the evidence upon which appellant relies and referred to herein does not conclusively show that it was the intention of the parties not to convey the mineral interests involved herein. The findings of the trial court in this respect are also sustained.

It is our opinion that the judgment of the trial court should be and it is affirmed.

Affirmed.